UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BRIAN M. BROWN,

       Plaintiff,                              Civil No. 09-271-HA

       v.                                    OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

HAGGERTY, District Judge:

      Plaintiff brings this action requesting judicial review of a decision by the Commissioner of the Social Security Administration (SSA) denying his application for Supplemental Security Income (SSI) benefits. He seeks an order reversing the Commissioner's decision and remanding this case for further proceedings. For the following reasons, this court concludes that the findings of the Commissioner are based upon the correct legal standards and are supported by

1  - OPINION AND ORDER

substantial evidence in the record. The final decision of the Commissioner denying plaintiff's application for SSI benefits is affirmed.

**ADMINISTRATIVE HISTORY**

Plaintiff applied for SSI benefits on December 31, 2003, alleging that he has been unable to maintain employment since December 2001 because of impairments arising from his depression, anxiety, learning disabilities, and fibromyalgia. Tr. 94, 98.[1] This application was denied initially and upon reconsideration. A hearing was conducted before an Administrative Law Judge (ALJ) on February 6, 2007. Tr. 512-25. The hearing was reconvened on April 4, 2007, and again on June 12, 2007. The ALJ determined that the appropriate period for disability review began on November 1, 2003, and concluded that plaintiff was ineligible for SSI benefits. Plaintiff appealed unsuccessfully to the SSA Appeals Council, and then sought judicial review.

**FACTUAL BACKGROUND**

Plaintiff was twenty-four years old at the time of his alleged disability onset date. He has an eleventh grade education and has worked as a parking lot attendant and a courtesy clerk. Tr. 97, 99, 104. He was diagnosed with "probable fibromyalgia" in 1998 after suffering an automobile accident, and subsequently underwent several surgeries for facial scarring. In June 2003, plaintiff sought treatment for pain, headaches, and mental problems. His physician, Dr. Patra Behary, stated that plaintiff was non-compliant with her past advice, and diagnosed "an adjustment disorder with mixed anxiety/depression." Pl.'s Brief at 3 (citing Tr. 489).

---

1    Citations beginning with "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer.

2  - OPINION AND ORDER

Plaintiff was assaulted in 2006 and sought additional treatment that included having his head, neck, and shoulder x-rayed. Tr. 505-08. Later that year plaintiff suffered another vehicular accident, injuring his knee. Tr. 256. Other details of plaintiff's medical history will be reviewed as necessary in this ruling's analysis.

**STANDARDS**

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, benefits are denied.

If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. §404.1520(a). If the claimant lacks such impairments, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least one of the claimant's impairments is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of

3  - OPINION AND ORDER

Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's Residual Functional Capacity (RFC), which is the most an individual can do in a work setting despite the total limiting effects of all the claimant's impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) and Social Security Ruling (SSR) 96-8p.

Upon the establishment of the claimant's RFC, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Hoopai*, 499 F.3d at 1074-75 (citations omitted).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. *See* 20 C.F.R. § 404.1520(f)(1). If the

Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility.  20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (citations omitted); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted).  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations and quotations omitted).

This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  *Tackett*, 180 F.3d at 1098 (quotation and citation omitted).

The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome.  *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citations omitted).

A decision to deny benefits may be set aside only if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record.  *Benton*, 331 F.3d at 1035.

## SUMMARY OF THE ALJ'S FINDINGS

At step one, the ALJ found that plaintiff performed SGA after the alleged onset date of November 1, 2003, but proceeded to step two because plaintiff had a period of at least twelve months since the onset date in which he did not engage in SGA.

At step two, the ALJ found that plaintiff suffered from the severe impairments of depression, anxiety, and somatozation disorder.  Tr. 22.

At step three, the ALJ determined that plaintiff's impairments – either singly or in combination – did not meet or equal an impairment in the Listings.  Tr. 26.  Plaintiff's RFC was assessed as allowing a full range of work at all exertional levels, with the following non-exertional limitations: plaintiff is functionally illiterate and limited to simple, routine work that does not require frequent changes in the work environment or more than occasional contact with the public and co-workers.  Tr. 27.

At step four, plaintiff was determined to be capable of returning to his past work as a parking lot attendant and courtesy clerk.  Accordingly, the ALJ was compelled to conclude that plaintiff was not disabled and not entitled to disability benefits.  Tr. 31.

## QUESTION PRESENTED

Plaintiff contends that this court should reverse the Commissioner's final decision and remand this action for further proceedings because the ALJ improperly (1) failed to develop the record about plaintiff's impairments; (2) erred in assessing plaintiff's RFC; and (3) erred in determining that plaintiff could return to past relevant employment.

The court has considered each of plaintiff's arguments.  For the following reasons, this court concludes that the ALJ's conclusions are supported by substantial evidence.

**DISCUSSION**

      1.       **The ALJ's duty to develop the record**

Plaintiff complains that the ALJ failed to adequately develop the record concerning his impairments. A claimant bears the initial burdens of proving disability. However, the ALJ also "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quotations and citations omitted). "This duty extends to the represented as well as to the unrepresented claimant." *Id*.

The responsibility to develop the record rests with the ALJ in part because disability hearings should not be adversarial in nature. *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). Administrative regulations also mandate the ALJ to look "fully into the issues" at hearings. 20 C.F.R. §§ 404.944, 416.1444.

Relatedly, an ALJ must take reasonable steps to ensure that issues and questions raised during the presentation of medical evidence are addressed so that the disability determination is fairly made on a sufficient record of information. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999 (as amended); *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (explaining how an ALJ may obtain additional evidence where medical evidence is insufficient to determine whether claimant is disabled); 20 C.F.R. §§ 404.1512(e), 416.912(e) (obtaining additional information from treating doctors).

Fulfilling the duty to develop the record may compel the ALJ to consult a medical expert or to order a consultative examination. *See* 20 C.F.R. §§ 404.1519a and 416.919a; *Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir. 1998) (the ALJ may be required to call a medical expert to

assist in determining when the plaintiff's impairments became disabling in cases in which the record is ambiguous).

Plaintiff argues that the ALJ's conclusions about the non-severity of a number of plaintiff's impairments (including allegations of irritable bowel syndrome, shortness of breath, vision difficulties, and a permanent knee injury), and about the credibility of testimony from plaintiff and his mother, were the result of the ALJ's failure to obtain updated medical reports and improper reliance upon plaintiff's lack of treatment. Pl.'s Br. at 17-18. Specifically, plaintiff contends that after plaintiff explained his inability to obtain medical treatment because of his poverty, the ALJ should have ordered an updated consultative examination as well as a medical source statement that established the extent of plaintiff's impairments. *Id*. at 19.

However, an examination of the record makes clear that the ALJ relied upon a fair and full evaluation of the medical evidence presented in determining the severity of plaintiff's claimed impairments. Tr. 22-26. The ALJ concluded reasonably that if plaintiff's symptoms regarding the alleged non-severe impairments were as significant as claimed by plaintiff and his mother, plaintiff would have sought treatment. Tr. 28. The ALJ acknowledged plaintiff's financial restrictions, but reasoned that plaintiff would have been compelled to at least mention the described symptoms and impairments to medical personnel, or to have sought emergency treatment. *Id.* Additionally, the ALJ considered opinions from Clinical Psychologist Scott Losk, Ph.D., who evaluated plaintiff in 2004 and observed that plaintiff was "over-interpreting pain phenomenon and attempting to demonstrate behaviors that would suggest that he is more impaired than he actually is. . . ." Tr. 29 (citing 455-58; internal quotation omitted).

Moreover, none of the non-severe impairments at issue triggered the ALJ's duty to develop the record. Plaintiff's only mention of irritable bowel syndrome occurred in plaintiff's testimony at the hearing. Tr. 539.

Similarly, plaintiff's testimony at the hearing about a debilitating shortness of breath was otherwise unsupported by medical evidence. The record provides one reference to plaintiff's mild allergies and asthma, possibly diagnosed by a pediatrician. Tr. 393. No other complaints of severe shortness of breath appear in the record, as the ALJ properly noted. Tr. 25.

Plaintiff's allegations about severe vision problems are similarly unsupported by any other evidence. The ALJ's thorough consideration of this allegation was proper and needs no further analysis. Tr. 25.

While there is substantive documentation about plaintiff's knee injury, the ALJ properly evaluated the objective medical evidence regarding this impairment. Tr. 26. Plaintiff was injured in early July 2006, but was released to work less than a week after the accident (restricted to sedentary work). Tr. 496-503. Plaintiff complained of pain during follow-up examinations, but objective evaluations found his knee to be weight-bearing and the complaints of pain to be "more than expected at this time." Plaintiff's failure to pursue any additional prescribed treatment for his knee injury was also properly considered by the ALJ. Tr. 26.

The ALJ also evaluated the medical reports about plaintiff's headaches and fibromyalgia correctly. Tr. 23. These records "reflect minimal treatment after 2003," and so contradict plaintiff's claim that his fibromyalgia is severely limiting. *Id*. Plaintiff also elected to pursue little or no compliance with prescribed medications, follow-up appointments, or other treatment.

The ALJ's inferences about these impairments were reasonable, and therefore must be upheld. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (findings must be upheld if supported by inferences reasonably drawn from record evidence). Accordingly, the ALJ was not required to seek additional evaluations of plaintiff's unsupported allegations.

Similarly, plaintiff's argument that the ALJ should have obtained a medical source statement is unpersuasive. Doctor Losk provided a medical source statement in which he diagnosed a pain disorder and a learning disability. Tr. 460-61. The ALJ considered this evidence properly, and the decision not to seek additional statements is supported by substantial evidence in the record.

Finally, plaintiff's challenge to the ALJ's credibility determinations because of an inadequately developed record is rejected. The ALJ's analysis of the credibility of the testimony at the hearing was thorough, proper, and supported by substantial evidence in the record. Tr. 24-30.

### 2. The ALJ's assessment of plaintiff's RFC

Plaintiff challenges the ALJ's assessment of plaintiff's RFC, arguing that his physical limitations caused by pain were overlooked. Plaintiff repeats his contentions that the ALJ should have obtained updated medical records to establish plaintiff's present limitations, and argues that the ALJ ignored the limitations recognized after plaintiff's knee injury in 2006. Plaintiff also contends that the ALJ rejected evidence that plaintiff suffers from fibromyalgia and headaches. Pl.'s Br. at 19-20.

The argument that additional medical examinations were warranted is addressed above. While it is true that plaintiff was limited to sedentary work briefly after his knee injury in 2006,

there is no evidence that this limitation was intended to be permanent. To the contrary, the doctor suggested that plaintiff "needs to be off his leg for one week" until the next examination, and to limit himself to "sit down type work" if available. Tr. 496. This doctor later diagnosed the knee to be weight-bearing, noted improvement, and omitted limitations. Tr. 492, 495.

The ALJ never rejected medical opinions about plaintiff's fibromyalgia or headaches. Instead, the ALJ evaluated those opinions (which contained no limitations), and noted that plaintiff's decisions about treatment suggested that these impairments were not severely limiting.

When making a residual functional assessment finding the ALJ is required to rely on the record as a whole. SSR 96-5p. Here, the ALJ considered plaintiff's ability to work after the alleged onset of disability, which reasonably demonstrated that plaintiff's medically determinable impairments created no significant physical limitations. Tr. 23-26, 28-30.

The ALJ's RFC assessment also included an evaluation of plaintiff's testimony. Tr. 28-30. The ALJ evaluated that testimony properly. An ALJ need not believe every allegation of disabling pain or functional limitation advanced by a claimant. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Instead, the ALJ undertakes a two-step analysis when considering a claimant's subjective credibility. At step one, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom," and "if the claimant meets this threshold and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281-84 (9th Cir. 1996);

11 - OPINION AND ORDER

s*ee also* SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

When determining a claimant's credibility, the ALJ may consider many factors in weighing credibility, including ordinary techniques of evaluation (such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid) and inadequately explained failures to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider conflicting medical evidence, effective medical treatment, inconsistent statements, daily activities inconsistent with the alleged symptoms, and testimony that is vague or less than candid. *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1039-40 (9th Cir. 2007); *see also Light v. Commissioner*, 119 F.3d 789, 792 (9th Cir. 1997) (the ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms).

A claimant's statements cannot be rejected solely because the testimony is viewed as unsubstantiated by the available objective medical evidence. 20 C.F. R.§§ 404.1529(c)(2); 416.929(c)(2). However, if the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Here, as noted above, medical opinions called into doubt plaintiff's credibility. The ALJ also considered observations from SSA field office personnel, who noted inconsistencies between plaintiff's alleged inability to understand simple questions and his ability to engage in complex discussions with his mother about his appeal of an earlier disability application. Tr. 30.

The ALJ examined inconsistencies between plaintiff's testimony and the information he provided in his written disability application and statements to physicians about his symptoms. Tr. 29. The ALJ evaluated plaintiff's testimony correctly, and that testimony – properly credited – does not invalidate the RFC the ALJ assessed for plaintiff. Tr. 28-30. *See Tonapetyan*, 242 F.3d at 1147-48; *Thomas*, 278 F.3d at 959.

### 3. The ALJ's determination that plaintiff could return to his work

Finally, plaintiff argues that the findings at step four are erroneous because (1) plaintiff's RFC was defined inadequately; (2) the ALJ failed to perform a functional analysis of plaintiff's relevant past work; (3) the ALJ's hypothetical question to the vocational expert (VE) attending the hearing was incomplete.

The challenge to plaintiff's RFC has been addressed above, and is rejected. The argument that the ALJ failed make requisite findings about the physical and mental demands of plaintiff's past work is also rejected. The ALJ relied on the VE's opinion that plaintiff's past work "did not require work-related activities precluded by his residual functional capacity." Tr. 31.

A vocational expert may offer testimony regarding whether a claimant with certain physical and mental limitations can perform past relevant work as it was actually performed or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2). The ALJ's finding regarding plaintiff's capacity to perform past relevant work is supported by substantial evidence. The VE's questioning and the responsive testimony were proper and adequately support the ALJ's conclusions.

13 - OPINION AND ORDER

Plaintiff's argument that the ALJ's hypothetical question was incomplete because plaintiff's functional illiteracy should have precluded plaintiff being able to return to his past work is also without merit. Plaintiff testified that he had difficulty reading because he needed to read aloud to understand the material. Tr. 549. On his written forms, he indicated that he could read and write some English. Tr. 97. There is no evidence presented that his functional illiteracy precluded successful performance of his past jobs. Past relevant work can be evaluated either as generally performed according to the Dictionary of Occupational Titles (DOT) or as the claimant actually performed the work. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (the Ninth Circuit does not require explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed; a VE merely has to evaluate whether a claimant can continue past relevant work as defined by SSA regulations).

Here, the VE testified that plaintiff's performance was consistent with the general requirements of the jobs as defined by the DOT. Tr. 569. Plaintiff's arguments notwithstanding, the VE adequately explained the reasoning for determining that the level of plaintiff's public contact varied in both positions, but that overall would not exceed one-third of the day. Tr. 569-70. Accordingly, the ALJ's conclusion that plaintiff could return to past relevant work is supported by substantial evidence in the record.

Plaintiff's other arguments, including his reference to an obvious clerical error regarding plaintiff's gender and inapplicable past work, have been considered. None of the arguments is found to rise above the level of harmless error.

**CONCLUSION**

This court has fully reviewed the record of this case and each of plaintiff's arguments. This court concludes that the decision of the Commissioner is based upon the correct legal standards and is supported by substantial evidence in the record. The final decision of the Commissioner denying plaintiff Brian Brown's application for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this   11   day of March, 2010.

       /s/ ANCER L. HAGGERTY
       ANCER L. HAGGERTY
       United States District Judge